## Whitemarsh Township v.
## F. M. Brokerage Corporation

*Clark Hess,* for Whitemarsh Township.
*John Kaufman,* for defendant.

TREDINNICK, J., November 24, 1972.—Plaintiff, a township of the second class in this county, seeks to compel the demolition of a structure owned by defendant, alleging it constitutes a nuisance dangerous to human life and the public welfare. Defendant denies the allegations. After hearing, the matter is ready for disposition.

## FINDINGS OF FACT

1. Plaintiff is a second class township organized under the laws of the Commonwealth of Pennsylvania, with its principal offices at Joshua Road, Lafayette Hill, Montgomery County, Pa.

2. Defendant is a Pennsylvania corporation, with its principal offices located at 1202 Blue Bell Road, Blue Bell, Pa.

3. Defendant is owner of premises situate at 611 Germantown Pike, Lafayette Hill, in Whitemarsh Township. The property has 75-feet frontage on Germantown Pike, and extends in depth therefrom approximately 176 feet. Its location is in a generally commercial use area of the township. Restaurant businesses are conducted immediately adjacent to both sides of the property—the General Lafayette to the south, and Whitemarsh Inn to the north. A private right-of-way separates the latter from the subject property. Germantown Pike is a well-traveled, major arterial highway.

4. The property is occupied by an uninhabited stone and frame structure. It was apparently last occupied some nine years ago, when it was used as a combina-

tion store and dwelling. The property is nonconforming, in that the building encroaches substantially upon the open front and side yards required by the Whitemarsh Township Zoning Ordinance. The side of the building is from five to eight feet from the northerly side boundary line along which the aforementioned private right-of-way exists.

5. The stone portion of the structure, of considerable antiquity, is a two and one-half story building, the walls of which are two and one-half feet thick covered exteriorly with stucco. While apparently structurally sound, it is in a state of disrepair. Portions of the stucco covering have worn away or fallen. A segment of the rear of the roof is badly deteriorated. Windows and doors on the first floor are covered with plywood. Some second floor windows are similarly covered, but others are open to the elements. All four attic windows are fully exposed, and it appears that pigeons have established a roost there. The wooden floor of a porch extending across the front of the building is in deplorable condition, dangerous to anyone walking upon it.

6. The rear portion of the structure is of frame construction, undoubtedly added to the stone building some time after its original erection. It is also in a state of disrepair. Efforts to control the integrity of this area through boarding of windows and doors have been less successful, and access to the interior is possible in several places.

7. A cistern is located in the rear yard, having an opening of approximately two square feet, and considerable depth. It is presently covered by sheet metal held in place by a piece of concrete. This presents an obvious hazard to children.

8. Plaintiff has, over a period of at least several years, periodically contacted defendant, requesting

that conditions deemed unsatisfactory by the township be corrected. Defendant has from time to time made efforts to prevent unauthorized access to the building, but these efforts have been periodically frustrated by trespassers forcing entrance.

9. In its present state, the property does constitute a nuisance.

## DISCUSSION

Plaintiff is authorized by statute: "To prohibit nuisances, . . . and to remove any nuisance or dangerous structure on public or private grounds after notice to the owner to do so. . .": Act of May 20, 1957, P. L. 174, sec. 5, as amended, 53 PS §65712. When a municipal entity seeks to exercise that power, inevitably two mixed questions of fact and law are presented: (1) Is the present condition of defendant's property such that it may be classified as a "nuisance or dangerous structure," and (2) If so, should equity automatically decree that it be completely demolished?

As we have noted in the ninth finding of fact, upon the testimony received and a personal inspection by the chancellor, there is little doubt that, viewed in the overall, the property is, in its present condition, a nuisance. Such structures beckon to adventurous children, and their explorations must almost inevitably lead to serious consequences in time. The possibility of injury to the traveling public through falling stucco or other debris, particularly in adverse weather, cannot be discounted. It constitutes an unreasonable fire hazard.

Under the circumstances, then, is plaintiff entitled to a decree directing the complete demolition of the structure? In construing a similar statutory provision in The Borough Code, this court aptly noted: "This is an awesome authority, since it empowers a gov-

ernmental body to destroy or cause the destruction of private property without compensation . . . Even if there is proper cause to invoke the act, the power of the (municipality) is limited to action which is reasonably deemed necessary to put an end to the nuisance or danger": Hatboro Borough v. Ivycrest Guernsey Dairies, Inc., 53 Mun. L. R. 284, 288 (1961).

Defendant contends that more than the usual property rights are involved in this case. As noted above, the property is nonconforming in that the positioning of the building on the lot encroaches upon the required front and side yards. Should it be razed, defendant would, in all likelihood, lose a zoning advantage and be relegated in any future use of the property to the tender mercies of the Zoning Hearing Board by seeking a variance. Consequently, defendant urges that he should be permitted to take corrective action, rather than be directed to completely demolish the building. Offers to take specific action were freely made at the hearing. Since we consider corrective action short of demolition to be feasible, we will direct that such be done.

Accordingly, we enter the following

## CONCLUSIONS OF LAW

1. Equity has jurisdiction over the cause and the parties.

2. The structure existing upon defendant's premises is in a condition sufficiently dangerous to trespassers and passersby as to constitute a nuisance.

3. Plaintiff is entitled to equitable relief.

4. The costs should be paid by defendant.

## DECREE NISI

And now, November 24, 1972, it is ordered and decreed that defendant shall in respect to premises

known as 611 Germantown Pike, Lafayette Hill, Whitemarsh Township, this county:

1. Forthwith fill in the cistern in the rear yard.

2. Within 45 days of the date hereof:

(a) Demolish the frame portion of the structure, and remove all debris thereby created;

(b) Remove the wooden floor and supporting structures of the front porch;

(c) Securely board up or otherwise block all entrances to the stone structure on the first floor thereof, and cover all other apertures on the second floor and attic against weather and bird life;

(d) Repair exterior walls where stucco has either fallen, or is likely to fall by reason of its deteriorated condition; and

(e) Repair the rear roof sufficiently to prevent wind and weather from further weakening it or dislodging pieces therefrom.

Unless exceptions are filed within 20 days of notice hereof, this decree will become final upon praecipe thereafter filed.